IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAMAH NAVAJO SCHOOL BOARD, INC.,

       Plaintiff,

vs.                                             No. 07 CV 0289 MV/ACT

KATHLEEN SEBELIUS, Secretary of the
United States Department of Health and
Human Services, *et al.*

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Objections to Magistrate Judge's Proposed Findings and Recommendations [sic] [Doc. 85], filed September 10, 2010. Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo determination of the portions of the Magistrate Judge's Proposed Findings and Recommended Disposition to which Plaintiff objects. Having considered Plaintiff's Objections, Defendants' Response [Doc. 87], Plaintiff's Reply [Doc. 95], Plaintiff's Notice of New Authority [Doc. 96], Defendants' Response [Doc. 97], and the relevant law, and being otherwise fully advised of the premises, the Court **DECLINES TO ADOPT** the Magistrate Judge's Proposed Findings and Recommended Disposition.

For the reasons set forth herein, the Court finds that Defendants' wrongful declination of Plaintiff's contract proposal entitles Plaintiff to compensation, but the evidence remains insufficient for the Court to determine the amount of such compensation. Therefore, the Court will hold an evidentiary hearing as to the issue of damages, and will consider evidence and testimony relevant to the issues that remain insufficiently developed, as described herein.

**BACKGROUND**

The factual background leading up to the filing of this lawsuit is set forth in detail in the Court's February 6, 2008 Memorandum Opinion and Order granting in part Plaintiff's Motion for Immediate Mandatory Relief [Doc. 47].  In that Order, the Court found as follows: (1) Defendants' refusal to enter into a self-determination contract unless Plaintiff agreed to specific language governing contract support costs (CSC) amounted to a violation of the Indian Self-Determination and Education Assistance Act (ISDA) and the Administrative Procedure Act (APA); (2) under the ISDA, Defendants did not have discretion to decline Plaintiff's proposal for a self-determination contract because none of the specified statutory grounds for declination existed; and (3) Plaintiff was entitled to injunctive relief on its first cause of action in accordance with 25 U.S.C. § 450m-1(a).  Doc. 47 at 17-18.  Presently at issue is whether or not Plaintiff is entitled to compensation for the period of time between Defendants' declination of Plaintiff's contract proposal and the parties' commencement of a contract.

On August 17, 2010, after holding an evidentiary hearing as to the issue of damages, the Magistrate Judge issued his Proposed Findings and Recommended Disposition [Doc. 82], ultimately recommending that no damages be awarded.  He found that the ISDA did not provide for a damage remedy in the absence of a contract, and he further concluded that Plaintiff was not entitled to damages as an equitable matter because to award Plaintiff damages for services already provided by IHS would constitute a windfall.  *Id*. at 14.

Plaintiff objects to the Magistrate Judge's conclusion that it is not entitled to damages, on grounds that both his reading of the statute and his reasoning regarding damages as an equitable matter, are erroneous.  Defendants respond that the Magistrate Judge's findings are correct and should be adopted.  In addition, Plaintiff has submitted notice of a recently decided Tenth Circuit

2

case, *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054 (10th Cir. May 9, 2011), which it argues demonstrates that it would be error to conclude, as the Magistrate Judge recommended, that Plaintiff is not entitled to damages because Defendants used the money in question to provide services to Ramah Navajos through their operation of the Zuni-Ramah Service Unit ("ZRSU") hospital.  Defendants respond that the Magistrate Judge's conclusion – that Plaintiff is not entitled to damages because no contract was in place and Defendants provided services to Plaintiff directly – is not impacted by *Ramah Navajo Chapter v. Salazar*.

## DISCUSSION

**I.     Applicable Law**

This Court must make a de novo determination of the portions of a Magistrate Judge's proposed findings and recommended disposition to which either party timely objects.  28 U.S.C. § 636(b)(1).  After its de novo review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

The ISDA directs the Secretary of Health and Human Services and/or the Secretary of the Interior ("Secretary"), upon request of a Native American tribe, to enter into self-determination contracts that provide funding for the tribe to administer programs that the Secretary would otherwise administer.  25 U.S.C. § 450f(a)(1).  Approval of a tribe's proposal is mandatory under the ISDA unless the Secretary specifically finds one or more of five statutorily delineated deficiencies in the contract proposal.  25 U.S.C. § 450f(a)(2).

**II.     Referral for Evidentiary Hearing**

On February 6, 2008, the Court found that Defendants' declination of Plaintiff's proposed self-determination contract was unlawful and it ordered injunctive relief on Plaintiff's

first cause of action.  As the Court stated in its May 19, 2010 Order of Reference, the February 6, 2008 Memorandum Opinion and Order "was a clear signal to Defendants that they were obligated to enter [a self-determination] contract as of the date of the order."  Doc. 72 at 2; *see also* 7/21/2010 Tr. Evid. Hr'g before Magistrate Judge Alan Torgerson at 222-24 ("THE COURT: . . . Can you really stand there and tell me that you didn't interpret Judge Vázquez's order to mean that, for the years at least 2008, 2009, 2010 going forward, Indian Health Services was supposed to approve this contract and you couldn't rely on a dispute about contract cost services [sic] as a reason to decline the contract? . . .  How can you come to any conclusion other than that Judge Vázquez intended to require the Indian Health Services to sign this contract for [2008, 2009 and 2010]?").

The issue now is whether or not Defendants' obligation to enter a contract with Plaintiff, and their ensuing failure to do so, entitles Plaintiff to damages for 2008, 2009, and 2010.  Both parties claim they provided the relevant services to the Ramah Navajo tribe during this period. Plaintiff argues that the evidence it presented at the July 21, 2010 evidentiary hearing before the Magistrate Judge establishes that it used third-party funds (from Medicaid and Medicare) to provide the services for which it sought to contract, and it seeks to be compensated for the period between Defendants' declination until the parties finally entered a self-determination contract.[1] Defendants argue that they proved at the hearing that in light of the parties' dispute over the start date of the contract and the amount of contract support costs, as well as the consequent failure to agree on a contract moving forward, it was Defendants who provided the services for which Plaintiff sought to contract, by operating the ZRSU.  This hospital was located a significant

---

[1] Defendants noted in their June 6, 2011 brief [Doc. 97] that the parties have now entered a going-forward contract.

distance from the boundaries of Ramah Navajo land, but it had an open door policy allowing any member of the Ramah Navajo tribe to take advantage of its services.

In his Proposed Findings and Recommended Disposition, the Magistrate Judge found that Plaintiff was not entitled to damages.  He first noted that Plaintiff has been operating the Pine Hill Clinic since the 1970's, and it has always used third-party funds to do so.  He then noted that IHS retained responsibility to manage the programs, functions, services and activities ("PFSAs") and tribal shares that were not subject to self-determination contracts, and the agency's decision to put that money toward the ZRSU was within its discretion to use this funding in the manner it deems best meets the needs of its patient population.  He found Plaintiff's argument to be speculative that, had the contract been awarded, it would have used its third-party funds for other purposes.  He further stated that Plaintiff had not proven its entitlement to damages because it had not shown that its members did not receive health care as a result of Defendants' wrongful declination.  Rather, "at best," Plaintiff proved that tribal members could have accessed the medical services in question at a more convenient location if Defendants had approved the contract proposal.  Ultimately, the Magistrate Judge concluded that "Ramah Navajos continue to receive the benefits of their tribal shares which are the subject of the proposed 2007 self-determination contract through the ZRSU administered by the IHS." Doc. 82 at 9.

In addition, the Magistrate Judge examined the statutory language of the ISDA and held that the Act's remedial provision does not contemplate damages in this case because no contract was ever entered.  He further held that equity would not permit recovery of damages because Defendants have already used the money in question to operate the ZRSU, which provided the services for which Plaintiff wished to contract.

5

### III.    This Court's Reading of the ISDA

The ISDA confers jurisdiction on federal district courts "over any civil action or claim against the appropriate Secretary arising under this subchapter and, subject to the provisions of subsection (d) of this section[2] and concurrent with the United States Court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by this chapter." 25 U.S.C. § 450m-1(a).  The Act further provides:

> [T]he district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this subchapter or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this subchapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 450f(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract).

*Id*.  The Magistrate Judge found that Plaintiff was not entitled to recover damages because: (1) ISDA did not provide a damage remedy because no contract existed, and (2) equity would not permit recovery under these circumstances.

The Court concludes that the Magistrate Judge misconstrued the statute when he made both of these findings.  First, contrary to the Magistrate Judge's proposed finding, the ISDA does not preclude damages in the absence of a contract.  Second, because Defendants did not provide the services in question in any meaningful sense, equity would not preclude recovery.

### A.    *The ISDA Does Provide for a Damage Remedy*

A careful reading of the ISDA's statutory language demonstrates that money damages are available not only in the event a contract is entered and then breached, but also for other

---

[2] Subsection (d) states that the Contract Disputes Act shall apply to self-determination contracts.  25 U.S.C. § 450m-1(d).

violations of the ISDA.  The statute provides that the United States district courts have

jurisdiction "over any civil action or claim against the appropriate Secretary arising under this

subchapter."  25 U.S.C. § 450m-1(a).  In addition, pursuant to the ISDA and the Contract

Disputes Act, district courts have concurrent jurisdiction with the Court of Claims over civil

actions for money damages arising under self-determination contracts.  *Id*.  In other words,

subsection (a) of the ISDA's remedial provision describes two types of claims: (1) general

claims arising under the ISDA over which federal courts have exclusive jurisdiction, and (2)

claims for money damages under self-determination contracts, over which United States district

courts share jurisdiction with the Court of Claims.

 The Act's remedial provision next provides: "In an action brought under this paragraph,

the district courts may order appropriate relief including money damages[.]"  *Id*.  The Court

reads this language to authorize it to order money damages in *any* action brought under

subsection (a), provided that such relief is appropriate.  In addition, courts may order injunctive

relief, "including immediate injunctive relief to reverse a declination finding . . . or to compel the

Secretary to award and fund an approved self-determination contract."  *Id*.  Particularly in light

of the ISDA's provision allowing for money damages "in an action" brought under the statute, it

would be illogical to state that the Act allows courts to compel the funding of a contract, yet if

the government fails to follow the court's order, the tribe never has any right to retroactive

payment of the funds.  Here, Plaintiff has brought an action not for breach of contract, but for

wrongful declination, and this is among the many actions that plaintiffs may bring under the

ISDA.  Accordingly, money damages are an available remedy should the Court determine that

damages are appropriate.[3]

### B.     *Equity Does Not Preclude Recovery*

The Magistrate Judge found that Plaintiff's claim to damages was speculative, as it had not provided evidence or documentation of how it would have used the funds had Defendants not wrongfully declined the contract proposal.  He found that Plaintiff was not entitled to damages because it had not shown that any tribal members lacked health care as a result of Defendants' declination.  He further found that damages would be inappropriate and would result in a windfall for Plaintiff, because Defendants had used the funds at issue to provide services through the ZRSU, and these services were available to Ramah Navajos.  He reasoned that to award Plaintiff damages would amount to a windfall, because it had already received the benefit of the funds which it sought to be paid.  Moreover, he stated, under the ISDA's Model Agreement, the Secretary has the right to use the funding not allocated under self-determination contracts however it deems best to meet the needs of the population, which in this case included the Ramah Navajos as well as members of the Pueblo of Zuni.

The Court finds the Magistrate Judge's reasoning to be not entirely complete. Defendants' statutorily granted discretion to allocate the funds that are not subject to self-determination contracts does not negate their duty to fund contracts that meet the criteria set forth in the ISDA.  The facts that Plaintiff continued to spend third-party revenues on the

---

[3] The Court agrees with the reasoning of the Magistrate Judge in this case regarding *Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005).  *Samish* does not undermine the Court's conclusion that damages may be available under the ISDA.  There, the Federal Circuit limited its holding – that the ISDA did not provide for a damage remedy in the absence of a contract – to the unique facts of that case.  *Id*. at 1365.  One important fact in *Samish* was that the tribe had "never incurred any administrative costs" for the period for which they sought compensation, so awarding damages would have amounted to a windfall.  *Id*. at 1367.

services it hoped to fund through a self-determination contract, and Defendants continued to

provide services as they saw fit to meet the needs of both the Zunis and Ramah Navajos, do not

undermine Plaintiff's claim that it has been damaged by the declination.  Although Defendants

continued to provide health care services through the ZRSU and these services were available to

Ramah Navajos who were able to travel the distance to that facility, Defendants cannot escape

liability for the wrongful declination by pointing to services it provided in lieu of funding the

proposed self-determination contract.[4]  The fact remains that Plaintiff applied for funds to which

it was entitled, and Defendants wrongfully denied Plaintiff these funds.

One need only look to the spirit and purpose of the ISDA to determine whether or not

Plaintiff has been damaged.  It would undermine the Act's purpose – Indian self-determination –

to recognize actions for money damages only after the government enters a contract and then

breaches it.  The ISDA's purpose would also not be honored if courts were to require the specific

showing of tangible harm that the Magistrate Judge appears to have required.  Rather, the

government's failure to grant a contract request to a tribe that meets the statutory criteria

undermines the tribe's ability to achieve self-determination, thus damaging the tribe.  To fully

understand the significance of such a wrongful declination, it is necessary to review the purpose

---

[4] In this sense, *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054 (10th Cir., May 9, 2011) is instructive, although only by way of analogy.  There, the Tenth Circuit looked to the purpose of ISDA and held that an agency may not escape payment of Contract Support Costs for any given self-determination contract simply because insufficient congressional appropriations forced the agency to choose which contracts to underfund.  Although congressional appropriations are not the issue here, it is important to note the Tenth Circuit's reasoning that led to its holding: whereas tribes that contract with the government should be bound by congressional funding choices, they should not be "bound by the allocation choices of the disbursing agency or the contracts formed with other tribes and tribal entities."  *Salazar*, 644 F.3d at 1070.  Like in *Salazar*, it is not enough for Defendants to simply state that they used the wrongfully declined funds for a laudable purpose – providing health care services through ZRSU.

of the ISDA.

> The ISDA commences with the following statement of findings:
>
> (1)  the prolonged Federal domination of Indian service programs has served to retard rather than enhance the progress of Indian people and their communities by depriving Indians of the full opportunity to develop leadership skills crucial to the realization of self-government, and has denied to the Indian people an effective voice in the planning and implementation of programs for the benefit of Indians which are responsive to the true needs of Indian communities; and
>
> (2)  the Indian people will never surrender their desire to control their relationships both among themselves and with non-Indian governments, organizations, and persons.

25 U.S.C. § 450(a).  Following these preliminary findings is a "congressional declaration of policy" which recognizes the government's duty to "respond to the strong expression of the Indian people for self-determination by assuring maximum Indian participation in the direction of educational as well as other Federal services to Indian communities so as to render such services more responsive to the needs and desires of those communities."  25 U.S.C. § 450a(a). Through the ISDA, Congress "declare[d] its commitment to . . . the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services."  25 U.S.C. § 450a(b).  A review of the legislative history of the ISDA demonstrates that through its passage, Congress hoped to "give substance and credibility to the concept of Indian self-determination," which it acknowledged previous legislation had failed to do.  H.R. REP. No. 93-1600, P.L. 93-638, at 7 (1974).

The Magistrate Judge found that Plaintiff's claim of damages was speculative because it had not shown exactly how it would have spent the wrongfully declined funds, nor had it shown

that any of its members did not receive health care due to the wrongful declination.  This ignores the true import of the ISDA, whose overarching goal is for tribes to achieve self-determination, and which permits a district court to order money damages if such relief is appropriate.  Here, Defendants prevented Plaintiffs from achieving self-determination and money damages are therefore appropriate; Defendants not only wrongfully declined Plaintiff's contract, but they refused to enter a contract even after the Court in no uncertain terms ordered them to do so.  However, at the evidentiary hearing, the parties took an all-or-nothing approach, essentially framing the question as whether Plaintiffs were entitled to $1.6 million – the amount they would have received to date had Defendants approved the original contract proposal in 2007 – or nothing at all.

Defendants' wrongful declination, and their ensuing failure to enter a going-forward contract, ran contrary to the goal of "assuring maximum Indian participation in the direction of educational as well as other Federal services to Indian communities so as to render such services more responsive to the needs and desires of those communities."  25 U.S.C. § 450a(a).  As Carolyn Finster testified at the July 2010 evidentiary hearing, members of the Ramah Navajo tribe continue to live in impoverished conditions: roughly 70% of the population is unemployed; roughly 40-50% of the population has electricity, and only about 30% of the households have running water.  *See* 7/21/2010 Tr. Evid. Hr'g before Magistrate Judge Alan Torgerson at 62.  In addition, the tribe "never has enough money to provide for the health care needs" of its population.  *Id*. at 63.  Had the parties entered a self-determination contract in a timely fashion, the tribe could have begun to address these challenges by taking control over the provision of health care services to its own members, as contemplated by the ISDA.

11

The Court finds that Plaintiff has indeed been damaged, in the sense that it was wrongfully prevented from assuming control over the provision of health care services to tribal members, contrary to the will of the ISDA.  However, the Court still lacks sufficient information to determine the extent of the harm that Plaintiff has suffered.  The Court declines to adopt the Magistrate Judge's finding that Plaintiff is entitled to no damages, but it also does not believe that damages should be measured according to the precise dollar amounts that would have been awarded under each year's self-determination contract, had they been approved.  Rather, damages here are a measurement of both the concrete harms, as well as those harms that are less tangible, that Plaintiff suffered due to its inability to take control over the provision of health care services to tribal members.

## CONCLUSION

For the reasons stated herein, the Court **FINDS** that an evidentiary hearing is necessary to assess the amount of damages to which Plaintiff is entitled.

It is hereby **ORDERED** that within twenty-one (21) days of the entry of this order, the parties shall: (1) file witness and exhibit lists as applicable; (2) advise the Court as to the time each party needs to present its evidence pertaining to the issue of damages; and (3) advise the Court as to any other issues pertaining to the hearing.

Dated: this 28th day of September, 2011.

_____
MARTHA VÁZQUEZ
U.S. DISTRICT COURT JUDGE

*Attorney for Plaintiff:*
Michael P. Gross

*Attorneys for Defendant:*
Tamara Ulrich
Jan Elizabeth Mitchell