IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAMAH NAVAJO SCHOOL BOARD,
INC.,

        Plaintiff,

vs.                                    No. 07 CV 0289 MV

KATHLEEN SEBELIUS, Secretary of
the U.S. Department of Health and Human
Services, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion in Limine to Exclude certain Proffered Testimony of Peterson Zah and the Proffered Testimony of Manley Begay, Jr. [Doc. 117]. On June 25, 2012, the Court orally denied Defendants' motion, and issues this opinion to set forth its reasoning.

### ISSUE

In their motion, Defendants objected to Plaintiffs' proffered experts, Peterson Zah and Manley Begay, Jr. Professor Begay is a lecturer and social scientist at the University of Arizona, in the Native Nations Institute for Leadership, Management and Policy. The purpose of his testimony is to analyze the effect of IHS's declination on the Ramah Navajo community's cohesion, moral and social integration, and RNSB school enrolment. Mr. Zah served as chair of

1

the Navajo Tribal Council and Chief Executive Officer of the Navajo Nation, and he was then

elected as the Navajo Nation's first president.  He is now a member of the U.S. Secretary of the

Interior's Commission on Indian Trust Administration and Reform.  He will testify as to the

effect of IHS's declination on harmony in the community – Navajo concepts called *K'e* and

*Hoz'ho*, which cannot be accurately translated into English – as well as the impact of

Defendants' actions on the Pine Hill clinic, its patients, and RNSB and its students.

Defendants argue that Professor Begay is not qualified to testify as an expert and that Mr.

Zah is not qualified to testify as to the question of damages, but he may testify as to Ramah

Navajo culture and history.  Defendants argue that Mr. Zah is not an expert in economic

development or health care, and he is therefore unqualified to identify the particular harms that

resulted from the contract declination.  They further argue that Mr. Zah's opinion will not be

reliable because it is based on interviews conducted with Ramah Navajo community members in

a group setting.  This, argue Defendants, is inadequate because each person would have allowed

their comments to be shaped by the other participants.  In addition, Mr. Zah fails to identify any

particular methodology he employed to reach his conclusions.

With respect to Professor Begay, Defendants argue that his testimony is unreliable

because it is based upon and summarizes the statements of Ramah Navajo community members

"which he accepts unquestioningly as true."  Doc. 117 at 15.  Defendants argue that Professor

Begay's failure to conduct any other investigation into the conditions of the community renders

his testimony unreliable.  Defendants then identify specific portions of Professor Begay's

deposition testimony that evidence his unfamiliarity with certain details regarding the Pine Hill

2

Health Clinic and the Ramah Navajo School Board, arguing that this demonstrates he is not qualified to testify as to the effects on these entities of Defendants' declination.  Defendants next argue that Professor Begay's methodology of "triangulation" is unreliable.  According to Professor Begay, "triangulation" is essentially cross-checking information gathered from one source with that gathered from another source, to ensure accuracy.  Defendants state that even if this were a reliable methodology, Professor Begay did not apply it reasonably because he conducted interviews in a group setting.

### APPLICABLE LAW

Rule 702 of the Federal Rules of Evidence "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993)).  The Court retains broad discretion in assessing an expert's reliability and making its ultimate determination of reliability.  *Atty. Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) (citations omitted).

In order to determine whether an expert's opinion is admissible, the Court must undergo a two-step analysis, first assessing reliability, and then assessing whether or not the proffered evidence will assist the trier of fact.  *Ralston*, 275 F.3d at 969; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006).  In the reliability prong, the Court must determine whether the expert is "qualified by 'knowledge, skill, experience, training, or education' to render an opinion."  *Ralston*, 275 F.3d at 969 (quoting FED. R. EVID. 702).  If the expert is so

3

qualified, the Court must assess helpfulness by determining whether his opinions are relevant under the principles set forth in *Daubert*. *Id.*

With respect to reliability, the Court must "assess the reasoning and methodology underlying the expert's opinion." *Rodriguez-Felix*, 450 F.3d at 1123. The Supreme Court in *Daubert* listed four, non-exclusive factors that a trial court must consider in making its reliability assessment: (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. The Court's gate-keeping function is ultimately to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 536 U.S. 137, 152 (1999).

If the reliability prong is satisfied, the Court then must consider other non-exclusive factors to determine whether the testimony will assist the trier of fact. *Rodriguez-Felix*, 450 F.3d at 1123 (summarizing factors as follows: "In essence, the question is whether the reasoning or methodology properly can be applied to the facts in issue." (quoting *Daubert*, 509 U.S. at 593)). Where, as here, the trier of fact is a judge and not a jury, "*Daubert's* standards must still be met, [but] the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise . . . ." *Tyson Foods*, 565 F.3d at 779. In *Tyson Foods*, which involved a bench trial, the Tenth Circuit held that it was not an abuse of discretion for the trial court to first admit the

4

expert's testimony and subsequently find it to be unreliable.  *Id*. at 780.  The court's reasoning was based primarily on the fact that "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation."  *Id*.

## DISCUSSION

Based on Plaintiff's description of the testimony each expert intends to offer, as well as the expert reports provided to the Court, the Court concludes under the liberal standards set forth in *Daubert* and Rule 702 that the proposed testimony meets the reliability requirement.  The expert reports outline each expert's qualifications and experience.  Peterson Zah served as president of the first all-Navajo public school board.  He helped to establish – and later became the executive director of –  the largest legal services organization in the country that services the American Indian community, DNA People's Legal Services.  Advocacy for tribal sovereignty and self-governance was a large component of Mr. Zah's work at DNA.  Later Mr. Zah became the chairman and eventually the President of the Navajo Nation.  He then worked as advisor on Indian affairs to the president of the University of Arizona, and further established a Native American Achievement program there.  Mr. Zah has studied the Ramah Navajo community and contrasted it with another local Navajo community – Rough Rock – and concluded that the declination at issue in this lawsuit is to blame in part for some of the woes of the Ramah Navajo community.

Dr. Manley Begay, Jr. holds a B.A. in Education, a master's degree in Educational Administration, as well as another master's and a Ph.D. in Administration, Planning and Social Policy. He focuses on Indigenous communities, specializing in education, economic development and nation-building. He is a tenured professor in the University of Arizona's American Indian Studies Program and founding director of the Native Nations Institute for Leadership, Management and Policy. He has published extensively and testified publicly on the subjects of Indigenous community economic development, nation-building, and self-governance. Dr. Begay studied the record of this case and interviewed Ramah Navajo community members about the harms suffered as a result of Defendants' declination, and also compared the circumstances of the Ramah Navajo tribe to those of other tribes who were able to effectively take control of various aspects of self-governance. Dr. Begay has provided a report of his conclusions.

With respect to the experts' methodologies, Plaintiff's experts intend to testify as to the harms suffered by RNSB and the Ramah Navajo community as a result of Defendants' wrongful declination of Plaintiff's contract proposal. Because the Court requested evidence of harms that are less quantifiable and tangible than the amount of money each contract would have provided, the Court will not exclude proffered experts who testify as to these harms simply based on the less concrete nature of their data. To be sure, in personal injury lawsuits, experts testify as to damages for pain and suffering, notwithstanding the fact that these types of harms are not readily quantifiable. In a case such as this one, where independent sources assessing the harm this declination caused RNSB are limited, it would be unwise to bar these experts' testimony on

grounds that they collected their data primarily by interacting directly with the affected community. In addition, it is clear from both experts' reports that they compared the data they gained from their interviews to case studies of other Native American communities, and based their conclusions on their experience in their respective fields.

With respect to helpfulness, the Court is aware that the principles derived from *Daubert* and its progeny apply in hearings such as this where no jury is present. The Court is well aware of its gatekeeping function with regard to expert testimony. However, the Court is also persuaded by the Tenth Circuit's reasoning in *Tyson Foods*: where, as here, the trier of fact is a judge and not a jury, "*Daubert's* standards must still be met, [but] the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise . . . ." *Tyson Foods*, 565 F.3d at 779. *Tyson Foods* grants the Court "greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Id*. at 780. This, combined with the liberal standards of the Rules of Evidence, convinces the Court that exclusion of Plaintiffs' proffered expert testimony would be improper. *See Daubert*, 509 U.S. at 588 (noting "liberal thrust" of Rules); *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (same). Under these principles, the Court may admit the proffered testimony and decide not to consider it should it find it unhelpful as to the issue of damages.

In conclusion, the Court finds that neither expert's testimony should be excluded at this juncture. As the Court noted at the hearing, Plaintiff has thus far given the Court no method for measuring the intangible damages to which the experts are testifying. Nor has Plaintiff advanced any authority to support its position that it may collect damages on behalf of the Ramah Navajo

7

community, as opposed to damages it can prove with respect to RNSB itself (aside from quoting provisions of ISDA).  If Plaintiff does meet its burden with respect to these two issues, the Court believes that Plaintiff's experts will be reliable and helpful in assessing the relevant harms.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion in Limine to Exclude certain Proffered Testimony of Peterson Zah and the Proffered Testimony of Manley Begay, Jr. [Doc. 117].


Dated this 27th day of June, 2012.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**