IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAMAH NAVAJO SCHOOL BOARD,
INC.,

      Plaintiff,

vs.                                                                       No. 07 CV 0289 MV

KATHLEEN SEBELIUS, Secretary of
the U.S. Department of Health and Human
Services, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion and Memorandum to Reconsider in Light of New Authority* (Doc. 144). The Court has considered the motion, briefs, and relevant law, and being otherwise fully informed, **FINDS** that the motion shall be **DENIED** for the reasons set forth herein.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. *In re Thornburg Mortgage, Inc. Secs. Litig.*, No. 07-85, 2011 WL 2429189, *19 (D.N.M., June 2, 2011). When a party seeks to obtain reconsideration of a non-final order, the motion is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner*, 983 F.2d 1120, 1122 n.1 (10th Cir. 1991). Although a district court has "considerable

1

discretion" to revisit its prior decisions, *see Thornburg Mortgage*, 2011 WL 2429189 at *19, "as a rule [the Court] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (citation omitted).

Tenth Circuit case law is clear that a motion for reconsideration is an "inappropriate vehicle [] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Fye v. Oklahoma*, 516 F.3d 1217, 1224 (10th Cir. 2011) (finding district court did not abuse its discretion in denying motion for reconsideration on basis that "considerations of fairness and judicial economy outweigh[ed] the Plaintiffs' interest in getting a second (or third) bite at the summary judgment apple"); *Otero v. Nat'l Distrib. Co., Inc.*, 627 F. Supp. 2d 1232, 1237 (D.N.M. 2009) (motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple"). Rather, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete*, 204 F.3d at 1012. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* "

Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is apparent to the point of being indisputable." *Shirlington Limosine & Transp., Inc. v. United States*, 78 Fed. Cl. 27, 31 (2007)

2

(citation omitted). "The manifest injustice exception requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong." *Fin. Res. Network, Inc. v. Brown & Brown, Inc.*, 867 F. Supp. 2d 153, 190 (D. Mass. 2012) (citation omitted).

## BACKGROUND

In its May 9, 2013 Memorandum Opinion and Order, the Court found that Plaintiff was entitled to compensation in an amount representing the damages it suffered due to Defendants' wrongful declination. Plaintiff requests that the Court reconsider its ruling that Plaintiff was not entitled to the full, statutorily mandated contract amount. Specifically, Plaintiff argues that the Court's decision was "manifestly unjust," based on a recent opinion from the District Court of the District of Columbia, which Plaintiff states involves "very similar facts." Doc. 144 at 3; Doc. 144-1, *Seneca Nation of Indians v. U.S. Dep't of Health and Human Svcs.*, Civil Action No. 12-1494 (RMC) (D.D.C. May 23, 2013). Defendants respond that Plaintiff has identified no proper ground for reconsideration, as: (1) in claiming manifest injustice, Plaintiff merely repeats arguments it has already made; and (2) *Seneca Nation* is an out-of-circuit district court opinion that simply applies the same reasoning as several previous opinions this Court has already addressed and found to be distinguishable from this case.

## DISCUSSION

I.      *Seneca Nation* Does Not Signal an Intervening Change in the Controlling Law.

As an initial matter, because it is a district court case from another Circuit, *Seneca Nation* cannot be cited as signaling "an intervening change in the controlling law" for purposes of Plaintiff's motion to reconsider. Indeed, opinions from the District of Columbia have no precedential effect in the District of New Mexico. "District court decisions cannot be treated as

authoritative on issues of law.  The reasoning of district judges is of course entitled to respect, but the decision of a district judge cannot be a controlling precedent." *Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320, 1329 (10th Cir. 2008) (citations omitted).  This Court nonetheless may consider *Seneca Nation* for its persuasive value.  But because, as set forth below, *Seneca Nation* is materially distinguishable from the instant case, the reasoning in *Seneca Nation* simply does not apply, much less provide a basis for this Court to reconsider its decision.

II.     *Seneca Nation* Is Distinguishable and Provides No Basis for Reconsideration.

The parties in *Seneca Nation* entered into a self-determination contract in 1999.  Like any self-determination contract, the parties' contract was indefinite, and it was supplemented with an annual funding agreement ("AFA") every year.  On April 29, 2011, the president of the Seneca Nation sent a letter to IHS, advising that IHS had substantially undercounted the Nation's active user population in 2010 and, as a result had allocated insufficient funding to the Nation, such that the health care services the Nation provided to its members were not fully funded as they should have been pursuant to the ISDA.  The Nation requested an amendment to its AFAs for 2010 and 2011 to account for the funds that should have been allocated had the population been accurately counted.  IHS acknowledged receipt of the Nation's letter, but then failed to substantively respond to it.  The issue before the Court in *Seneca Nation* was whether IHS's failure to respond to the tribe's proposed amendment amounted to approval of the proposal, and if so, whether this entitled the Seneca Nation to the full amount of funds it proposed be added to its contract.

In deciding that the tribe was indeed entitled to the full amount of funds it proposed to be added to its contract, the Court relied on certain provisions of the ISDA and the Code of Federal Regulations.  Specifically, the ISDA provides that a tribe may submit to the Secretary a

"proposal to amend or renew a self-determination contract," and the Secretary "shall" approve the proposal within ninety days, or set forth her reasons for declining it.  25 U.S.C. § 450f(a)(2).  The federal regulations governing ISDA contracts state that a proposal to amend an already existing self-determination contract "can only be declined within 90 days after the Secretary receives it, unless that period is extended with the voluntary and express written consent of the Indian tribe or tribal organization."  25 C.F.R. § 900.21.  "A proposal that is not declined within 90 days . . . *is deemed approved* and the Secretary shall award the contract or any amendment or renewal within that 90-day period *and add to the contract the full amount of funds* pursuant to section 106(a) of the [ISDA]."  25 C.F.R. § 900.18 (emphasis added).

The Court stated that the tribe's April 29th letter "proposed in plain terms to amend the Nation's FY 2010 [and FY 2011] Agreement[s] to increase funding by $3,774,392, plus interest."  Doc. 144-1 at 16.  In response to this proposed amendment, the Secretary did nothing, missing the 90-day deadline set forth in the Code of Federal Regulations.  Accordingly, the proposal was deemed approved, obligating the Secretary to fully fund the newly amended contract.

The *Seneca Nation* Court specifically observed, "[i]f the Secretary wished to take the position that the April 29, 2011 Letter was . . . not a proper amendment proposal . . . , she should have done so within the statutorily provided 90 days."  Doc. 144-1 at 24.  In other words, the *Seneca Nation* Court acknowledged that had the Secretary acted within 90 days of the proposed amendment, a contract would not have gone into effect.  Implicit in this observation is the fact that the tribe would not have been entitled to the full contract amount if, like here, no contract actually existed.

In the instant case, the Court has repeatedly found that the Secretary *did* respond within 90 days of RNSB's submission to HIS of its proposal to amend its mature contract. While determining that IHS's asserted reason for declining the contract, namely, the tribe's refusal to waive its right to contract support costs, was illegitimate, the Court nonetheless specifically determined that IHS's response within the 90-day window meant that the contract was *not* "deemed approved." *See* 25 C.F.R. § 900.18.  Thus, while in *Seneca Nation* the Secretary's inaction amounted to an approval of the tribe's proposed amendment, the instant case involved an express declination of RNSB's contract proposal.  Under these circumstances, the very reasoning of *Seneca Nation* would foreclose RNSB from receiving the full contract amount.

*Seneca Nation* is further distinguishable because the Seneca Nation had indeed incurred the costs associated with the missing funds, while here RNSB did not show – and could not have shown – that it had actually expended the funds in question.  The Court in *Seneca Nation* explained that the very nature of self-determination contracting under the ISDA requires the parties to enter into contracts based on their predictions about future costs.  Therefore, "[i]t is completely logical to imagine a scenario . . . in which one of the parties learns belatedly that one of its key presumptions at the time of negotiation was materially flawed."  Doc. 144-1 at 19.  The Court explained that in the particular case of the Seneca Nation's contract with IHS, "[i]n order to have sufficient funding to cover all healthcare costs actually incurred, that party asks the other to reform the contract.  While FY 2010 had concluded when the Nation realized its error and proposed the amendment, that fact does not mean that the Nation had paid for all of its FY 2010 costs."  *Id*. at 19-20.  The Court described a "gross differential between predicted and actual

6

costs," which prompted the Seneca Nation to "propose that it receive more funding because there had been an error of substantial magnitude." *Id*. at 20.

As this excerpted portion of *Seneca Nation* demonstrates, the tribe *actually spent* the money that it requested in its proposed amendment. The measure of damages in *Seneca Nation* therefore was simple: the contract amount, which represented the costs the Seneca Nation actually incurred as a result of IHS's undercounting.  In stark contrast, here RNSB failed to show that it incurred costs in the amount of the proposed additional contract funds.  Nothing in *Seneca Nation* suggests that the Court's calculation of damages here, where the Court looked to the harm that RNSB actually suffered as a result of the wrongful declination, was manifestly unjust or contrary to controlling law.

III.     Plaintiff Has Not Established Manifest Injustice.

Plaintiff argues that "RNSB should not be worse off because its proposal to add funds required by law to its contract was unlawfully declined – rather than, as in *Seneca*, just ignored – particularly when the Indian Health Service delayed implementation of the relief ordered by this Court for several years." Doc. 144 at 6.  While this argument is forceful on a gut level, Plaintiff has failed to point to any statutory or regulatory authority that would support it.

Plaintiff instead argues that the result in this case is "manifestly unjust", as the difference between IHS's declination of RNSB's contract proposal and its failure to respond to the Seneca Nation's amendment proposal amounts to a mere technicality.  While the Court agrees that the difference between ignoring a proposal and wrongfully declining one should not justify such disparate results for RNSB and the Seneca Nation, given the clear language of the ISDA and the Code of Federal Regulations, in addition to the case law interpreting their relevant provisions,

the Court simply cannot agree that its prior decision, which properly applied the law, "is unreasonably or obviously wrong." The Court correctly determined that it is without power to award the full contract amount, its frustration with IHS for its actions in this case notwithstanding.

## CONCLUSION

For the reasons set forth above, Plaintiff's *Motion and Memorandum to Reconsider in Light of New Authority* (Doc. 144) is **DENIED**.

Dated this 29th day of January, 2014.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiff:*
Michael P. Gross
Daniel H. MacMeekin
Jake Eugene Gallegos

*Attorneys for Defendant:*
Justin Michael Sandberg
Patrick Nemeroff
Jan Elizabeth Mitchell
Thomas Zimpleman